\* ROBERT FUREY AND THOMAS F. WHITE, RESPONDENTS, *v.* THE TOWN OF GRAVESEND AND OTHERS, APPELLANTS.

*Letting of town lands — powers of electors at annual town meetings — effect of restrictions upon the power of leasing and sale.*

On April 4, 1871, a resolution was adopted by the electors of the town of Gravesend, at the annual town meeting, providing that the common lands of the town should thereafter be let only at public auction, to the highest bidder, after notice given as therein prescribed, and that " if any lot be so let to any person other than the last lessee owning improvements on said lot, the new lessee shall pay the former lessee for the value of improvements on the property at the expiration of the old lease (provided such improvements were on the property at the time of such public letting), at a rate to be fixed by arbitration between the old and new lessee." December 20, 1872, the town leased

\* Decided September, 1885

# 320    FUREY v. TOWN OF GRAVESEND.

certain lots described as lots Nos. 51 to 56 inclusive, and Coney Island Point to the plaintiff Furey for ten years, by a lease which contained no covenants or reservations in favor of the lessee, and no provision as to improvements. In 1879 the commissioners attempted to extend the term of the lease, but their action was illegal, and after the expiration of the term of the original lease, an action of ejectment was brought by the town, in which it recovered a judgment for possession in February, 1884.

Chapter 458 of 1883 vested the control of the common lands of the town in the supervisor and five trustees, and provided that they should have no power to sell or give title to any lands of the town, or to release or discharge any title or claim of the town thereto, excepting the lots Nos. 51 to 56 inclusive, and Coney Island Point, but that they might receive propositions in writing for the purchase or release of the title or claim of the town and consider the same, and if they should deem it for the interest of the town to accept the offer they were empowered to call a town meeting and execute a conveyance if authorized by a vote of a majority of the electors. The act further provided that the said supervisor and trustees should have power to sell the lots Nos. 51 to 56 inclusive and Coney Island Point "to the present lessees in possession of the same, provided such sale should be ratified and confirmed by resolution duly passed at an annual town meeting, or at a special meeting to be called for the purpose."

This action was brought in March, 1885, by the plaintiffs, the persons interested in the lease to Furey, who alleged that the trustees had received a proposition from another person for the lands leased to them, which they deemed it best to accept, and had called a town meeting to consider it, and prayed that they might be restrained from holding the meeting or selling or conveying the lands:

*Held*, that the act, chapter 458, of 1883, did not prohibit the sale of lots Nos. 51 to 56 and Coney Island Point to a person other than "the present lessees in possession of the same."

That, assuming that the provision of the resolution of April 4, 1871, requiring an incoming tenant to purchase the improvements of an out going tenant at a price to be fixed by arbitration should be treated as incorporated into the lease given to Furey, the obligation imposed upon the town was, if any, not an absolute one, but only that if the lot should be leased to any person other than the last lessee owning improvements then the new lessee should pay the former lessee the value of the improvements.

That if it could be claimed that the requirement of the resolution was sufficiently comprehensive to include a purchase as well as a lease, then no claim could be made unless the premises had been sold to a person other than the plaintiff.

That as the contingency upon which alone the liability could attach had not occurred, an action based upon such liability would at this time be prematurely brought.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*Wm. J. Gaynor*, for the appellants.

*William C. De Witt*, for the respondents.

DYKMAN, J.:

The object of this action is to arrest the sale of a part of the public domain of the town of Gravesend, and the proceedings inaugurated preliminary thereto. That town became the owner of all the land within its limits by a grant from the colonial government very early in its history. The original grant was from the sovereign to a corporation to be organized as a town, and was of itself sufficient to endue the body with capacity to hold the land. Independent of this consideration, however, the town when formed would have possessed the capability to hold property. The towns of this State are much more than local subdivisions of territory. They are well recognized legal entities and for many purposes they possess the capacity of corporate bodies. In a general sense they are public political corporations organized for governmental purposes. They are empowered to hold property and make such orders for the disposition, regulation or use of their corporate property as may be deemed conducive to the interests of their inhabitants. (1 R. S., 337, § 1, sub. 4.) Where land is owned by a town it belongs to the people in their political capacity as an aggregate community the same as all corporate property owned by a county or a State, and may be controlled, regulated and disposed of by the people in their collective political capacity. The only recognized legal organ through which the people of a town can declare their united will is the town meeting. These meetings are ancient institutions regulated by laws enacted by the representatives of the people, and at them the gathered will of the inhabitants is ascertained by the votes of the electors of the town in the manner prescribed by law. This is all common learning, requiring no citation of authority for its support, and is written down here only to manifest the legality of the procedure in relation to common lands of the town of Gravesend.

Anterior to the legislative action to be hereafter noticed the common lands of the town were under the immediate care and supervision of town commissioners who were guided and controlled by the electors of the town at their town meetings, and the power

and a majority of such commissioners had the extent imparted by the resolutions adopted at such meetings and no more.

On the 4th day of April, 1871, a resolution was adopted by the electors of the town at the annual town meeting then held, which reads as follows : " *Resolved*, That the common lands of the town of Gravesend, on Coney Island, shall hereafter be let only at public auction on the premises to be let, or at the town house in this town, to the highest bidder in parcels of not more than three hundred feet each (excepting Coney Island Point, which may be let in one parcel as at present), on notice specifying the time and place of letting and describing the premises to be let, which said notice shall be published in the Brooklyn Daily Eagle and Union, each once in each week for four weeks immediately prior to each letting. No lot shall be let at a time more than one year prior to the expiration of any lease thereon and no lot for a longer period than ten years. If any lot be so let to any person other than the last lessee owning improvements on said lot, the new lessee shall pay the former lessee for the value of improvements on the property at the expiration of the old lease (provided such improvements were on the property at the time of such public letting), at a rate to be fixed by arbitration between the old and new lessee, each choosing one arbitrator, and which said arbitrators shall on disagreement choose a a third, and the decision of such arbitrators or a majority of whom shall be final, and the above condition shall be specified in the notice above provided for whenever there are improvements on the premises to be so let."

On the 12th day of April, 1878, it was resolved by the electors of the town at a regular town meeting in the same manner that the resolutions of April 4, 1871, " be amended by adding thereto the following : The commissioners of common lands are also authorized to renew any existing lease or leases of common lands belonging to said town of Gravesend upon such terms as they may deem most advantageous for said town."

On the 20th day of December, 1872, the town of Gravesend, through its commissioners, executed and delivered to the plaintiff, Robert Fury, a lease of the parcels of the common lands of the town known as lots Nos. 51, 52, 53, 54, 55, 56, and Coney Island Point, for a term of ten years commencing February 1, 1873. The

lease contains several reservations in favor of the town, but there is in it neither reservation, condition nor covenant in favor of the lessee. It contains no stipulation respecting improvements, and there is an unconditional covenant that the lessee will quit and surrender the premises demised at the expiration of the term in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted.

The lessee entered into possession under that lease and purchased the improvements then on the premises, and has since increased the betterments by a large outlay. The plaintiff Thomas F. White became a joint owner in the lease during the lifetime thereof.

In the year 1879 the commissioners of common lands of the town executed to Francis Swift, who had then become interested in the former lease an instrument in writing dated March 17, 1879, purporting to renew the lease to Furey for twenty-one years from its termination. That instrument was without validity and in July, 1883, after the expiration of the lease to Fury an action of ejectment was commenced in favor of the town against these plaintiffs and others for the recovery of these same premises involved in this action. That action came to trial in February, 1884, and the plaintiff obtained a judgment therein for the immediate recovery of the possession of the premises.

On the 22d day of May, 1883, a law was made which superseded a former act in relation to the common lands of the town of Gravesend. (Chapter 458, Laws of 1883.) By this law the control of the common lands of the town was vested in the supervisor, and five trustees to be elected. Nothing in this law requires special notice in this case except portions of section 3, reading as follows : " The said trustees shall not have power to sell or give title to any lands of the town of Gravesend or to release or discharge any title or claim of said town thereto, excepting lots numbers 51, 52, 53, 54, 55, 56 and Coney Island Point, which premises are now in possession of lessees of said town, but they may receive any proposition in writing for the purchase or release of the title or claim of the town, and consider the same ; and if they shall deem it for the interest of the town to accept the same they shall publish a notice " in the manner prescribed, stating the proposition received and calling a town meeting of the electors to accept or reject it. Then

follows the regulation for the voting, and if a majority of the ballots cast shall be in favor of accepting the proposition the trustees and supervisor are authorized to accept the same, and execute the necessary conveyance. Then the section closes with these words : "But the said supervisor and trustees shall have power and are hereby authorized to sell said lots numbers 51 to 56, inclusive, of said common lands and Coney Island Point to the present lessees in possession of the same, provided such sale be ratified and confirmed by resolutions duly passed at an annual town meeting or at a special meeting to be called for the purpose, such sale to be upon the same terms of payment as herein provided for sale of other lands of said town."

The plaintiff brought this action in March, 1885, and their principal complaint is that the trustees of the town have received a proposition for the purchase of the premises in question, from William Zeigler, for $183,000, which they have considered and which they deem for the interest of the town to accept, and that they have called a town meeting of the electors of the town to pass on the proposition, and they pray for an injunction restraining the trustees from proceeding with the notice or the town meeting or from selling or conveying the lands. The plaintiff obtained judgment in the trial court, from which the defendants appealed, and we are thus brought in front of the questions to be determined. Independent of the statute of 1883, the rights of all persons to the possession of the premises under the lease to Fury ceased with its expiration in February, 1883. If they continued in possession after that time they were merely holding over without right, and so it was adjudged in the action of ejectment. They were not lessees in possession in the proper sense of that term. If they had a valid claim for improvements they could pursue any remedy provided by the law to secure compensation therefor. The form of the notice of auction sale under which the premises were let to Fury is not furnished, but we may assume that it responded to the requirements of the town's resolution. It has been stated that the lease contained no covenant on the part of the town, but assuming that the resolution and notice of the auction are to be considered as component parts of the lease, then they are to be read as such covenants. But what even then is the undertaking of the town? not absolutely that the lessees shall be

compensated for improvements at the expiration of their leases; not even that the town will make payment in any event. The covenant is dependent on a condition precedent. If any lot be leased to any person other than the last lessee owning improvements on the lot, then the new lessee shall pay the former lessee for the value of the improvements on the lot.

Assuming without deciding that this agreement imposed a legal liability on the town, yet it was conditional and the contingency on which the liability was to attach has not occurred. The town has not leased the premises to any person, and there is no proposition extant to do so. The legislature has intervened and prescribed a different mode of disposition of the public lands of the town, and as the power of that body to enact the law is not questioned, the plaintiffs and all others must abide by the new method.

If it can be claimed that the covenant of the town is sufficiently comprehensive to include a purchaser as well as a lessee, then the plaintiffs must withhold their claim for improvements until the lots in question are sold to a person other than themselves and then arbitrate with such purchaser as they would have done with a lessee. There is no agreement for an arbitration between the town and the plaintiffs, nor that the town shall pay. The agreement is that the new lessees shall pay, at a rate to be fixed by arbitration between the old and new lessees.

It is not requisite to determine now the legal effect of this covenant; nothing can be effected under it until there is either a lessee or purchaser of the premises. The impropriety of an injunction to restrain the sale and the production of a purchaser is therefore quite manifest. So it is therefore that these plaintiffs have no interest or right in the premises in question and nothing but an ultimate right to compensation for improvements either from a purchaser or from the town.

The plaintiffs, however, rely much on the statute of 1883. That law was passed May 22, 1883. Their rights to possession had expired with their lease, yet they had not been ejected. Under that statute the trustees had not power to sell the common lands of the town, except the premises in question, but those lands they were empowered to sell to the lessees in possession, meaning these plaintiffs, provided such sale was ratified in the manner prescribed.

The claim of the plaintiff is that the lands in suit were withdrawn from the mode of sale established by section three of the law by the exception provision contained therein, respecting such lands and the relation sustained by the plaintiffs thereto. They claim that there was an exception thrown upon the face of the general power, and that the general power is, therefore, inoperative except in so far as it may not interfere with the proviso.

The mistake here is in the premises. This statute contains no exception to a given power of sale, for no power of sale was conferred ; on the contrary, the general provision is that the trustees shall not have power to sell, and the exception is to this general prohibition. There is no restriction of a general power, but an enlargement or removal of a general prohibition in favor of these lands in suit. The general restriction is modified as to them, so as to allow the trustees to sell them to these plaintiffs in their discretion. If they make a written proposition to purchase these lands, and the trustees deem it for the interest of the town to accept the same, provided such sale shall be ratified and confirmed by the town meeting resolution.

So far the lands in suit are withdrawn from the general scope and operation of the statute. But the sale of the property is not restricted nor prohibited. In the beaten way of construction, the statute is plain but it furnishes very small aid to the plaintiffs. It invests the trustees with power to sell these lands to them on condition of the ratification of the sale by the town meeting. But even that power is discretionary and may or may not be exercised. If they do not deem the proposition beneficial to the town they are not required to consider it or to make any agreement. There is no coercive power. The sale to the plaintiffs must be the result of a voluntary agreement. It is beyond the competence of the legislature to compel a sale of these lands to the plaintiffs and there has been no legislative effort in that direction.

The trustees in the exercise of the discretion vested in them may sell to the plaintiffs, but the plaintiffs have manifested no desire to purchase and certainly it is not given to them to withhold these lands from the market by pursuing a policy of supine inactivity.

After a full view and a comprehensive examination of all the facts and circumstances which environ this case, and the law that

must control it, the unavoidable conclusion is reached that the plaintiffs are in no position to invoke the interposition of a court of equity in restraint of the consummation of the sale of these _ands by the defendants to Zeigler. This result would be reached with regret if it foreclosed the plaintiffs from their claim to compensation for improvements. It has in fact no such tendency, and it is quite gratifying to know that there is no disposition on the part of the representatives of the town to interpose any obstacle to the plaintiffs in that direction.

The conclusion is that the judgment should be reversed and a new trial granted, with costs to abide the event.

There was a motion for a preliminary injunction in this case which was denied and the plaintiffs appealed from the order. The foregoing examination leads to the conclusion that the order was proper and should be affirmed, with costs and disbursements.

BROWN, J., concurred ; CULLEN, J., concurred on the ground that the plaintiffs had no standing to maintain the action.

Present— DYKMAN, CULLEN and BROWN, JJ.

Order granting injunction reversed, with costs and disbursements. Judgment reversed and new trial granted, costs to abide event.